INHABITANTS OF FAIRFIELD vs. INHABITANTS OF OLDTOWN.

Somerset.    Opinion June 2, 1882.

*Evidence.    Pauper settlement.*

The presumption is in favor of a ruling, and it is necessary in order to sustain exceptions to the admission of evidence, that the excepting party should make it appear that there was nothing in the case as presented at *nisi prius* which would justify the admission.

In assumpsit for pauper supplies where the defendant denied the settlement, the following letter from one of the overseers of the defendant town to one of the overseers of the plaintiff town, dated February 25, 1877, was admitted in evidence against the objections of the defendant. "I received your bill of supplies for the Gonyea family. I think it is a little large. When I was at your place the second day of January, you had furnished about twenty dollars to the whole family of nine, five of them belong to us and four to you; that would be twelve dollars and fifty cents for us. Now eight weeks and two days since at two dollars per week, would be about sixteen dollars and seventy cents, which would make twenty-nine dollars and twenty cents; that is the way I make it. There is one boy that we do not take. Please answer if I am not right." The letter was not a reply to a notice and did not relate to any of the supplies embraced in the suit. *Held,* that as the exceptions did not show but that there were phases of the case which would justify the admission the presumption of the correctness of the ruling was not overcome. APPLETON, C. J., and PETERS, J., dissenting.

ON EXCEPTIONS.

(Exceptions.)

"Assumpsit for support of certain paupers named as follows in the writ: Joseph Gordon and Catharine Gordon his wife, and Joseph Gordon, Jr. son of said Joseph and Catharine, and also Augustus Ingalls and Flora Ingalls wife of said Augustus, and Napoleon Ingalls and Emily Ingalls, children of said Augustus and Flora; and also, Joseph Charity and Susan Charity wife of said Joseph Charity, and Frank Charity son of said Joseph and Susan.

"The defendants denied that the paupers had ever acquired a settlement in their town.

"The plaintiffs claimed they had acquired such settlement by a five years residence of Joseph and Catharine Gordon, or Gonyea as they were sometimes called, between 1842 and 1869, and they introduced the testimony of the Gordons tending to establish such residence, if believed.

"The defendants introduced evidence by cross-examination of said Gordons, and by independent witnesses, tending to show the contrary. And this was the principal issue between the parties.

"Upon this issue the plaintiff offered in evidence the following letter sent by one of the overseers of the poor of Oldtown to one of the overseers of the poor of Fairfield.

"Oldtown, February 25, 1877.

Mr. Totman, Dear Sir: I received your bill of supplies for the Gonyea family. I think it is a little large.

"When I was at your place the second day of January, you had furnished about twenty dollars to the whole family of nine, five of them belong to us and four to you; that would be about twelve dollars and fifty cents for us. Now eight weeks and two days since at two dollars per week, would be about sixteen dollars and seventy cents, which would make twenty-nine dollars and twenty cents; that is the way that I make it. There is one boy that we do not take. Please answer if I am not right,

Yours truly,          A. C. Brown."

"The defendants seasonably objected to the introduction of this letter as hearsay, and as inadmissible because a mere narrative of past transactions, but the court admitted it and allowed it all to be read to the jury who returned a verdict for the plaintiffs.

"Said letter was sent about two months after notice in the usual form had been sent by the overseers of Fairfield to the overseers of Oldtown in relation to said paupers. But it was not claimed by the plaintiffs that said letter was in answer to said notice; nor did it relate to any of the supplies embraced in this suit.

"To the foregoing ruling admitting the aforesaid letter the defendants respectfully except and pray that their exceptions may be allowed."

*S. S. Brown,* for the plaintiffs, cited : *Dennen* v. *Haskell,* 45 Maine, 430 ; *Hovey* v. *Hobson,* 55 Maine, 276 ; 68 Maine, 301 ; 10 Maine, 185 ; 49 Maine, 367 ; 4 Allen, 374 ; 9 Allen, 54 ; 12 Cal. 426 ; 116 Mass. 356 ; Hilliard, New Trials, 414.

*D. D. Stewart,* for the defendants, cited : *Burnham* v. *Ellis,* 39 Maine, 319 ; *Corinna* v. *Exeter,* 13 Maine, 321 ; *Franklin Bank* v. *Steward,* 37 Maine, 519 ; *Haven* v. *Brown,* 7 Maine, 421 ; *Maine Bank* v. *Smith,* 18 Maine, 103 ; *New Vinyard* v. *Harpswell,* 33 Maine, 193 ; 1 Greenl. Ev. 113 ; Story's Agency, § 134 ; *Fairlie* v. *Hastings,* 10 Ves. 127 ; *Dorne* v. *Southwork M'f'g Co.* 11 Cush. 205 ; *Dartmouth* v. *Lakeville,* 7 Allen, 285 ; *Stiles* v. *West R. R. Co.* 8 Met. 44.

BARROWS, J. The only exception here alleged is to the admission against the defendants' objection of a certain "letter sent by one of the overseers of the poor of Oldtown to one of the overseers of the poor of Fairfield." It bears date February 25, 1877, and obviously relates to some transaction *then proceeding* between the officers of the two towns respecting the support of the paupers whose settlement was here in controversy. It appears in the exceptions, that it was not a reply to any notice from the plaintiffs to the defendants, and did not relate to any of the supplies embraced in this suit.

The exceptions seem to have been carefully drawn by the learned counsel for defendants, in view of the rule which requires the party excepting to the admission of evidence to overcome the presumption in favor of the ruling, and make it apparent that there was no phase of the case as presented at *nisi prius,* which authorized the admission of the testimony in question. *Hovey* v. *Hobson,* 55 Maine, 256, 276. We may be sure that nothing consistent with the truth was omitted in these exceptions to bring the case within the rule. The rule is a just and useful one, and, if adhered to, will lessen the reproach that attends the granting of new trials which are ultimately found to serve no purpose but to postpone at large expense, a result that was both inevitable and correct.

But while we may be quite certain that defendants' counsel has overlooked no fact which would tend to sustain his exceptions,

there still remain probable phases of the case which justify the admission within repeated decisions of the court, and without infringing upon the salutary doctrine for which he contends that mere admissions of agents as to past transactions are not competent to affect their principals.    Our rule respecting the admission of evidence of former dealings between towns, through their officers and agents acting within the scope of the authority conferred on them by statutes, respecting paupers whose settlement finally becomes a subject of litigation between them, is laid down in *Harpswell* v. *Phipsburg*, 29 Maine, 313, and *Weld* v. *Farmington*, 68 Maine, 301, with sufficient clearness and precision for all practical purposes, and, so far as it differs from that of Massachusetts as shown in *New Bedford* v. *Taunton*, 9 Allen, 207; *Dartmouth* v. *Lakeville, Id.* 201, and S. C. 7 Allen, 285, we prefer it.

Seeing how often litigation as to the settlement of paupers or their progeny arises between towns after lapse of time has made it impossible to produce testimony which, in the outset of the controversy, was regarded by both parties as conclusive, we think the acts and doings of the town authorities when their attention is first called to the case, may fairly be regarded as possessing some probative force upon the question of settlement, even if the implied admission resulting therefrom must be regarded as an exception to the doctrine before referred to.    For obvious reasons often adverted to in the cases bearing upon this point, any admissions thence implied are not to be held as binding or estopping the town for the future, except where the statutes give them that effect.    They are simply to be weighed by the jury with the other evidence as part of the *res gestœ*, like other acts and facts from which a reasonable inference may be drawn, stronger or weaker, according to the concomitant circumstances. The letter was the act of the defendants' overseer in the progress of the transaction to which it related, and for aught we see was as competent as the town orders received in *Weld* v. *Farmington*, which served only to show that the defendants there had paid previous bills of the pauper whose settlement was disputed.

But the rule and its reasons and limitations were so fully dis-cussed in *Weld* v. *Farmington*, 68 Maine, 301, that further elaboration is needless. It is well established both in this State and New Hampshire, is wholesome and works well in practice. *Norridgewock* v. *Madison*, 70 Maine, 174. Defendants' counsel still objects that the document here presented was but the act of one of the defendants' overseers. But the act of one of the board accompanied as we may fairly presume this to have been (since the exceptions do not assert the contrary) with proof that what he did was by authority from his associates, or had been ratified by them, would have the same effect as though a majority of the board had participated in the act. *Fayette* v. *Livermore*, 62 Maine, 229; *Smithfield* v. *Waterville*, 64 Maine, 412, 416, 417; *Linneus* v. *Sidney*, 70 Maine, 114. Here, then, we have one phase of the case not negatived by the exceptions which would justify the admission upon the main issue under such limi-tations as to the purpose for which it might be used and as to its effect as the law requires, touching which we presume the jury were duly instructed if defendants' counsel deemed them of sufficient importance as the case stood to request it.

There is still another phase of the case apparent, which would authorize the admission of this document. The burden was on plaintiffs to prove the requisite statute notice to the defendants' overseers, and the identity of the paupers described in the writ as Gordons with the Gonyeas, by which name the paupers seem to have been known at Oldtown. It is easy to see how the visit of the overseer referred-to in the letter, and the arrangement for the adjustment of the bill for Gonyeas may have tended to remove any question that might be raised about the sufficiency of the notice.

The exceptions fail to make it appear that there was no phase of the case upon which the document objected to, properly sup-plemented by accompanying testimony, would be legitimate evidence, and as it may fairly be presumed that its use and effect

were properly limited, there is no occasion to send the case to a new trial.

*Exceptions overruled.*

WALTON, DANFORTH, LIBBEY and SYMONDS, JJ., concurred. VIRGIN, J. did not concur.

DISSENTING OPINION BY

APPLETON, C. J. This is an action of assumpsit for supplies furnished certain paupers named Gordon or Gonyea, who the plaintiffs claimed had acquired a settlement in the defendant town by a residence there of five years between 1842 and 1869. This was denied by the defendants.

Upon this issue the plaintiffs offered the following letter sent by one of the overseers of the poor of Oldtown to one of the overseers of the poor of Fairfied.

"Oldtown, February 25, 1877.

Mr. Totman, Dear Sir, I received your bill of supplies for the Gonyea family. I think it is a little large. When I was at your place the second day of January, you had furnished about twenty dollars to the whole family of nine, five of them belong to us and four to you; that would be about twelve dollars and fifty cents for us. Now eight weeks and two days since at two dollars per week, would be about sixteen dollars and seventy cents, which would make twenty-nine dollars and twenty cents. That is the way I make it. There is one boy that we do not take. Please answer if I am not right.

Yours truly, A. C. Brown."

To the admission of this letter the defendants except.

The letter relates to past transactions. It is not an answer to any notice given by the plaintiff town. It has no relations to any supplies embraced in this suit. It is not shown to have been authorized or ratified by the official associates of the writer.

This evidence was hearsay. It will hardly be contended that if the plaintiffs had offered of the oral declarations of Brown identical in terms with his letter that they would have been received. *Dartmouth* v. *Lakeville*, 7 Allen, 285 ; *New Bedford* v. *Taunton,*

9 Allen, 207. Brown was a competent witness and if the facts stated in the letter were relevant and material the defendant had a right to their delivery under the sanction of an oath and to the privilege of cross-examination. It is immaterial whether the hearsay declarations of Brown were oral or reduced. to writing.

If it be urged that Brown was an officer of the town still nothing is better settled than that the declarations of an agent as. to past transactions are not admissible. *Burnham* v. *Ellis*, 39 Maine, 319. His narrations of the past are not receivable. He· can no more admit away the rights of the town, than any other· agent can admit away the rights of his principal. *Corinna* v. *Exeter*, 13 Maine, 321.

The cases cited do not sustain the admission of hearsay evidence.

In *Harpswell* v. *Phippsburg*, 29 Maine, 313, it was held within the scope of the official powers of overseers of the poor to· settle and pay claims against their town for supporting paupers. In *Fayette* v. *Livermore*, 62 Maine, 229, the court held that one overseer might make a personal examination as to the necessity of supplies and that if his conclusions were ratified and affirmed by his associates, supplies furnished by his order and the furnishing ratified by his associates would constitute a furnishing by the town. It is not necessary that a majority of the overseers should make a personal examination of the necessity for supplies. They may act upon the information of one of their fellows. *Smithfield* v. *Waterville*, 64 Maine, 413 ; *Linneus* v. *Sidney*, 70 Maine, 115. In *Norridgewock* v. *Madison*, 70 Maine, 174, evidence of payments for pauper supplies after notice and· without denial of liability on the part of the town so paying was held admissible. In *Weld* v. *Farmington*, 68 Maine, 305, the· instructions were that the acts of town officers bind their town only when acting within the scope of their duty ; that the statute requires overseers of the poor to relieve a person found destitute in their town at the town's expense ; that when thus acting, their acts bind the town. In that case a record of town orders given by the overseers of the poor for the support of a pauper were held admissible. The evidence was received because it was the action

of town officers while in discharge of their duty. But that case furnishes no justification for the admission of a letter written by one of a board without the authority of his associates and not in the discharge of any official duty and containing merely a narrative of past events.

In no case has it been held that the declarations whether oral or written of an overseer, who was a competent witness, as to past transactions, were admissible. The ordinary and effective securities of an oath and cross-examination are wanting. The report negatives any phase of the case, in which such testimony could be admissible.

To determine whether the admission of this evidence was authorized resort must be had to the case as reported and not to conjecture. If from the facts as reported and from the necessary inferences from those facts, nothing appears to justify the admission of the evidence; it should have been rejected. In this case there is nothing which will sustain its admission. It is not for the court to sanction the admission of evidence, which, upon the case as reported is manifestly hearsay and illegal, because it may be guessed or imagined, that, upon some possible and undisclosed state of facts, it might be legally receivable.

PETERS, J., concurred.